UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for COMMUNITY BANK OF NEVADA, | ) ) ) ) | Case No.: 2:13-cv-00606-GMN-VCF |
| Plaintiff, | ) | **ORDER** |
| vs. | ) ) | |
| NEVADA TITLE COMPANY, a Nevada corporation; DOE INDIVIDUALS 1 through 10; and ROE CORPORATIONS 1 through 10, | ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is the Motion to Dismiss (ECF No. 18) filed by Defendant Nevada Title Company ("Nevada Title") on January 28, 2014.  Plaintiff Federal Deposit Insurance Corporation (the "FDIC") filed its Response (ECF No. 20) on February 13, 2014, and Nevada Title filed its Reply (ECF No. 23) on February 21, 2014.  The FDIC then filed a Motion to Strike Nevada Title's Reply (ECF No. 25) on February 25, 2014, to which Nevada Title filed a Response (ECF No. 30) on March 12, 2014.

Also pending before the Court are the Motion to Substitute Plaintiff (ECF No. 17) and Motion to Amend Complaint (ECF No. 19) filed by the FDIC on January 28, 2014 and January 29, 2014 respectively.  On February 21, 2014, Nevada Title filed its Response (ECF No. 24) to both motions, and the FDIC filed its Reply (ECF No. 26) on March 3, 2014.

**I.     BACKGROUND**

The FDIC initiated this action seeking to obtain contractual or equitable indemnification from Nevada Title for any of the FDIC's costs, attorney's fees, and damages that resulted from a declaratory relief action.  (Complaint, ECF No. 1). The relevant facts are as follows:

On October 11, 2005, nonparties Dynasty Towers, LLC ("Dynasty") and Outback Steakhouse of Florida, LLC ("Outback") entered into an "Agreement of Purchase and Sale" ("APS"), which set forth certain obligations between the two entities relating to Dynasty's purchasing of property from Outback located at 3695 West Flamingo Road, Las Vegas, NV 89103 (the "Property"). (*Id.* ¶¶ 4–6).  To assist in financing the purchase, Dynasty obtained a $6,600,000 purchase money loan from Community Bank of Nevada ("Community Bank"). (*Id.* ¶ 8).  The loan was secured by a Deed of Trust executed on March 10, 2008 that encumbered the Property in the first priority position. (*Id.* ¶¶ 7, 9; First Deed of Trust, ECF No. 1-1).  This First Deed of Trust was recorded with the Clark County Recorder's Office on April 4, 2008. (First Deed of Trust, ECF No. 1-1).

On April 4, 2008, the day escrow closed for the purchase of the Property, Dynasty granted Outback a Deed of Trust securing Dynasty's performance of its obligations to Outback under the APS. (Complaint ¶¶ 9–10, ECF No. 1, Second Deed of Trust, ECF No. 1-2).  This Second Deed of Trust was also recorded on April 4, 2008. (Second Deed of Trust, ECF No. 1-2).

Nevada Title served as the escrow agent for the closing of the April 4, 2008 transaction. (Complaint ¶ 13, ECF No. 1).  In the Escrow Instructions, Nevada Title was instructed to record the documents memorializing the transaction "only when [Nevada Title was] assured that the enclosed [First] deed of trust will be afforded a first lien priority status." (*Id.* ¶ 15; Escrow Instructions, ECF No. 1-3).  Escrow closed on April 4, 2008, and Outback conveyed the Property to Dynasty via a Grant, Bargain, Sale Deed recorded that day. (Complaint ¶ 16, ECF No. 1; Sale Deed, ECF No. 1-4).  The Sale Deed states that the Property is being conveyed subject to the APS, creating a "covenant running with the land." (Sale Deed at 2, ECF No. 1-4).

On October 8, 2008, Dynasty defaulted under the First Deed of Trust, which led to the FDIC being appointed receiver of Community Bank and ultimately acquiring the Property via a Trustee's Deed upon Sale on February 2, 2010. (Complaint ¶¶ 18–23, ECF No. 1). In its Complaint, FDIC asserts that the February 2, 2010 Trustee's Sale memorialized by the Trustee's Deed extinguished all junior liens, including the Second Deed of Trust and the APS covenant. (*Id.* ¶ 25).

On June 6, 2011, 26 Outback executed an "Assignment of Interests," under which it conveyed "all right, title and interest, if any," on the Property to Flamingo, LLC ("Flamingo"). (Assignment of Interest, ECF No. 1-5). The Assignment of Interests lists the APS covenant and Second Deed of Trust as interests that Outback may be conveying through the assignment. (*Id.*). Following the assignment, Flamingo asserted that the APS covenant had not been extinguished by the February 2, 2010 Trustee's Sale and demanded $4,000,000 in payment from the FDIC based upon its interest under the covenant. (Complaint ¶ 28, ECF No. 1).

Subsequently, on December 5, 2011, the FDIC filed a declaratory relief action in Federal District Court against Flamingo seeking a declaration from the court on the relative priority of the First Deed of Trust and APS covenant. (*Id.* ¶ 29; Dec. Action Compl. Ex. 1-1 to MTD, ECF No. 18). On April 9, 2013, during the pendency of the declaratory relief action, the FDIC filed the Complaint in the present action. (Complaint, ECF No. 1). In this action, the FDIC seeks contractual and equitable indemnity from Nevada Title for failing to follow the Escrow Instructions should the FDIC incur damages in the declaratory relief action based on Nevada Title's failure to properly place the First Deed of Trust in first priority. (Complaint ¶¶ 30–39, ECF No. 1).

On October 18, 2013, the FDIC and Flamingo settled the declaratory relief action and entered a Stipulation and Order dismissing the case. (Stip. and Order, Ex. 1-2 to MTD, ECF No. 18). In their settlement, the FDIC agreed to sell the Property to Flamingo for the purchase

price of $1,600,000 and both parties would release their claims against each other and dismiss the suit. (Mutual Settlement Agreement and Release, Ex. 1-3 to MTD ¶¶ 5–8, ECF No. 18).  As part of the settlement, FDIC's insurer, Commonwealth Land Title Insurance Company ("Commonwealth"), paid $400,000 to "facilitate settlement."[1] (McCall Affidavit ¶¶ 3–6, ECF No. 20-2).  Under the Insurance Policy, Commonwealth was subrogated and assumed all the rights, claims, and remedies of the FDIC relating to the claim paid out by Commonwealth. (Insurance Policy ¶ 12, ECF No. 20-1).

The parties subsequently filed the current pending motions in which Nevada Title seeks to dismiss the FDIC's claims and the FDIC seeks to substitute Commonwealth for itself as the real party in interest following the FDIC's assignment of its rights to Commonwealth under the principles of subrogation.

## II.    **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

---

[1] It is unclear from the record whether Commonwealth paid the $400,000 to the FDIC or to Flamingo as part of the settlement because neither party indicates the entity that received this payment in any of their filings. However, in the copy of the Insurance Policy attached to the FDIC's Response to Nevada Title's Motion to Dismiss, the portion of the policy addressing Commonwealth's obligation "to pay or otherwise settle with parties other than Insured" is highlighted. (Insurance Policy ¶ 6(b), ECF No. 20-1).  Therefore, the implication appears to be that Commonwealth paid $400,000 to Flamingo as part of the settlement.

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III. DISCUSSION

**A. Motion to Dismiss**

In the Complaint, the FDIC asserted two causes of action, contractual indemnity and equitable indemnity. (Complaint ¶¶ 30–39, ECF No. 1). "Noncontractual or implied indemnity is an equitable remedy that allows a defendant to seek recovery from other potential tortfeasors whose negligence primarily caused the injured party's harm." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009). "[C]ontractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work." *United Rentals Hwy. Techs. v. Wells Cargo*, 289 P.3d 221, 226 (Nev. 2012).

Nevada Title bases its Motion to Dismiss primarily on the argument that because the FDIC received $1.6 million in the settlement of the declaratory relief action, it has not suffered any damages and therefore cannot state a claim for relief. (MTD 2:3-11; 7:9-9:13, ECF No. 18). Additionally, Nevada Title argues that the FDIC's claim for equitable indemnity should independently be dismissed because no tort was alleged in the underlying declaratory relief action and because parties may not rely upon implied indemnity theories when they have agreed to an express indemnity provision in a written contract. (*Id.* 9:14-11:8).

As an initial matter, the Court notes that a tort claim in the underlying action is not a requirement for a claim of equitable indemnity.[2] *See Rodriguez*, 216 P.3d at 801 ("A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the

---

[2] Nevada Title cites *Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc.* for the principle that "[a] claim for equitable indemnity requires, *inter alia*, a tort claim by the original plaintiff against the proposed indemnitee." (MTD 9:16-19, ECF No. 18 (citing 795 F.2d 1501, 1508 (9th Cir. 1986)). However, this Ninth Circuit opinion, citing California law, makes no such finding. *See Operating Eng'rs Pension Trust*, 795 F.2d at 1508. Instead the Court held that a claim for indemnity "requires that the [indemnitor] must have committed a 'wrong' to entitle the [prospective indemnitee] to equitable indemnity." *Id.* Here, the FDIC has alleged that Nevada Title committed a wrong by failing to follow the Escrow Instructions. (Complaint ¶¶ 33, 37, ECF No. 1).

obligation ought to be discharged by the latter.") (citing 41 Am. Jur. 2d *Indemnity* § 20 (2005)). Therefore, Nevada Title's argument on this point is without merit.

      Regarding its argument that the FDIC's claim for equitable indemnity must fail because a party that contracted for an express indemnification provision may not rely on a theory of implied indemnity, Nevada Title appears to be correct on the law but wrong on the facts in this case. The Supreme Court of Nevada has held that "implied indemnity theories are not viable in the face of express indemnity agreements." *Calloway v. City of Reno*, 939 P.2d 1020, 1029 (Nev. 1997) *opinion withdrawn on grant of reh'g,* 971 P.2d 1250 (1998); *see also Wells Cargo*, 289 P.3d at 226 ("When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; rather it is enforced in accordance with the terms of the contracting parties' agreement.") (internal quotes omitted). However, the contract that the FDIC alleges gives rise to its claim for contractual indemnity is the Escrow Instructions, which does not contain any provision relating to indemnification. (Complaint ¶ 31, ECF No. 1; Escrow Instructions, ECF No. 1-3). Because the alleged contract does not contain an express indemnification provision, the FDIC's claims against Nevada Title "sound[] exclusively in implied contractual (equitable) indemnity, not contractual indemnity." *Medallion Dev., Inc. v. Converse Consultants*, 930 P.2d 115, 117 (Nev. 1997) *superseded by statute on other grounds as stated in The Doctors Co. v. Vincent*, 98 P.3d 681, 688 (Nev. 2004). Accordingly, because there is no contractual provision addressing indemnification, it is actually the FDIC's claim for contractual indemnification that must fail not its claim for equitable indemnification. *See id.*; *see also Wells Cargo*, 289 P.3d at 226 ("[C]ontractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work."). Therefore, because the FDIC has actually alleged a claim for equitable indemnity based upon a contract and there is no specific contract

provision addressing indemnity, the FDIC's claim for contractual indemnity is dismissed with prejudice.

Regarding its argument that the FDIC has not suffered damages—for which Nevada Title has failed to provide any supporting facts or relevant law—, Nevada Title appears to ignore the crucial fact that in exchange for the $1.6 million received in the settlement, the FDIC gave up title to property that it alleges it should have held free of Flamingo's interest but for Nevada Title's failure to follow the Escrow Instructions. (Complaint ¶¶ 33–34, ECF No. 1). A basic measure for damages in cases of breach of contract or negligence is the amount necessary to make the injured party whole and place him in the position he would have occupied had the contract not been breached or the tort not committed. *See Hanneman v. Downer*, 871 P.2d 279, 283 (Nev. 1994) (negligence); *Dalton Properties, Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984) (breach of contract).

The FDIC has alleged that if Nevada Title had properly followed the Escrow Instructions then the FDIC would own the Property free of Flamingo's alleged interest. (Complaint ¶¶ 33–34, ECF No. 1). While the precise value of the Property is currently unknown, in 2005, Dynasty took out a $6.6 million dollar loan in order to purchase the Property, and in 2010, Flamingo asserted that its rights to the Property were valued at $4 million. *See* (First Deed of Trust, ECF No. 1-1; Complaint ¶ 28, ECF No. 1). Therefore, based on the pleadings, it is highly probable that the value of the Property at the time of the settlement far exceeded its sale price and that selling the Property to Flamingo for only $1.6 million and a mutual release of claims resulted in a considerable loss for the FDIC. Such a loss constitutes damages for which the FDIC may seek relief. *See Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1002 (D. Ariz. 2011) (noting that "a jury could find with reasonable certainty that Plaintiff has suffered more than $100,000 in damages taking into account the $137,000 purchase price [and] the property's current value of $31,000" after the escrow agent failed to disclose the property

was encumbered by a deed of trust); *Hounshel v. Battelle Energy Alliance, LLC*, 4:11-CV-00635-BLW, 2013 WL 6073878, at *2–4 (D. Idaho Nov. 18, 2013) (recognizing that having to sell a house quickly for less than market value constitutes damages for which a plaintiff may receive relief).  Furthermore, while the FDIC ultimately bears the burden of proving these damages, such proof is not required at this stage in the litigation. *See Twombly*, 550 U.S. 544, 570 (2007) (To survive a motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."); *see also Clark Cnty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 97 (Nev. 2007) ("The plaintiff has the burden to prove the amount of damages it is seeking[, a]lthough the amount of damages need not be proven with mathematical certainty").

Accordingly, the FDIC's claim for equitable indemnification shall not be dismissed.

**B. Motion to Strike**

The FDIC has moved to strike portions of Nevada Title's Reply on the Motion to Dismiss.  In particular, the FDIC seeks to strike out the portions of Nevada Title's Reply that address the sufficiency of the new claims alleged in the Proposed Amended Complaint attached to the FDIC's Motion to Amend.[3] (Mot. to Strike 5:11-21, ECF No. 25).  However, because the Court has already ruled on Nevada Title's Motion to Dismiss without relying on any of the challenged statements in Nevada Title's Reply, the Motion to Strike is denied as moot.

**C. Motion to Substitute & Motion to Amend**

The FDIC's Motion to Substitute (ECF No. 17) and Motion to Amend (ECF No. 19) essentially seek the same result, to file a complaint in this matter with Commonwealth, as the new plaintiff, asserting all of the claims to which it alleges it is entitled against Nevada Title. Nevada Title has opposed both of these motions on the grounds that the FDIC's true purpose is

---

[3] Nevada Title also asserts these arguments virtually verbatim in its opposition to the Motion to Substitute and Motion to Amend. *Compare* (Opp. to Sub. & Amend. 12:1-15:9, ECF No. 24) *with* (Reply to MTD 7:5-10:9, ECF No. 23).

not to substitute the proper party or plead additional claims of an existing party, but to transform this case to enable Commonwealth to collect damages from Nevada Title for which Nevada Title does not have liability to pay. (Opp. to Sub. & Amend. 2:2-4:15, ECF No. 24). Nevada Title, however, bases this argument on its contention that the FDIC has no damages. (*Id.* 2:23-28). Nevada Title contends that the only damages arising from the settlement was the $400,000 payment made by Commonwealth, and that because the FDIC has no damages, Commonwealth's indemnity claim is inherently defective. (*Id.* 6:13-7:2)  Because the Court has already rejected Nevada Title's assertions that the FDIC has not suffered damages, its arguments against substitution and amendment are without merit.

The Federal Rules of Civil Procedure provide that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000).  The decision of whether to order substitution lies in the sound discretion of the trial court. *Id.*

Here, the FDIC has sufficiently alleged that it suffered damages as a result of Nevada Title's failure to follow the Escrow Instructions. *See supra* section III.A.  Commonwealth insured the FDIC for such loss and ultimately paid $400,000 under its policy to facilitate settlement of Flamingo's claims against the FDIC, which allegedly arose from Nevada Title's actions. (Complaint ¶¶ 31–39, ECF No. 1; McCall Affidavit ¶¶ 3–6, ECF No. 20-2; Insurance Policy, ECF No. 20-1).  Under the Insurance Policy, Commonwealth was entitled to subrogation and the assumption of all the rights, claims, and remedies of the FDIC relating to a claim paid out by Commonwealth to the extent of its payment. (Insurance Policy ¶ 12, ECF No. 20-1).  Accordingly, under the Insurance Policy and the basic principles of subrogation, by

paying $400,000 to facilitate settlement, Commonwealth assumed all the rights, claims, and remedies of the FDIC in this action. *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002); *Arguello v. Sunset Station, Inc.*, 252 P.3d 206, 208 (Nev. 2011).

However, because it appears that Commonwealth has not paid out the whole loss of the FDIC and is only subrogated to the extent of its $400,000 payment, both Commonwealth and the FDIC appear to "have substantive rights against [Nevada Title] which qualify them as real parties in interest." *Arguello*, 252 P.3d at 208.  Therefore, the Court finds it appropriate in the exercise of its discretion to join Commonwealth as a party in interest in this case but not to substitute it for the FDIC.

Turning to the FDIC's Motion to Amend, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). ("Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.").

The FDIC has not previously amended the complaint, and Nevada Title has presented no evidence that granting leave to amend in this case would result in undue delay or prejudice. Moreover, Nevada Title's assertion that amending the Complaint would be futile because the FDIC and Commonwealth cannot show damages is again premised on its erroneous belief that FDIC has not suffered damages.  Therefore, amending the Complaint to join Commonwealth as a plaintiff and add additional claims is permissible.

Local Rule 15-1, however, requires that a party moving to amend a pleading must attach the proposed amended pleading to their motion to amend, and if that party's motion to amend is granted, then the attached pleading shall be filed and served. D. Nev. L.R. 15-1.  While Plaintiffs did attach a Proposed Amended Complaint to their Motion to Amend, that Proposed Amended Complaint contains a claim for contractual indemnity and removes the FDIC as a plaintiff in this case. (Prop. Am. Complaint 1, ¶¶ 54–59; ECF No. 19-2).  Because this Court has found the claim for contractual indemnity must fail and that the FDIC is still a party in interest, the current Proposed Amended Complaint is defective.  Therefore, the Court denies the Motion to Amend without prejudice.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that NTC's Motion to Dismiss (ECF No. 18) is **GRANTED in part and DENIED in part**.  The FDIC's claim for contractual indemnity is dismissed with prejudice.

**IT IS FURTHER ORDERED** that FDIC's Motion to Strike (ECF No. 25) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the FDIC's Motion to Substitute Plaintiff (ECF No. 17) is **GRANTED in part and DENIED in part**.  Commonwealth Land Title Company shall be joined as a plaintiff in this case.

**IT IS FURTHER ORDERED** that the FDIC's Motion to Amend Complaint (ECF No. 19) is **DENIED without prejudice**. The FDIC and Commonwealth may file a new motion to amend with an attached proposed amended complaint that complies with this order.

**DATED** this __25__ day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge