1   GLENN F. MEIER, ESQ.
    Nevada Bar No. 006059
2   gmeier@nvbusinesslawyers.com
    RACHEL E. DONN, ESQ.
3   Nevada Bar No. 010568
    rdonn@nvbusinesslawyers.com
4   **MEIER FINE & WRAY, LLC**
    2300 West Sahara Avenue, Suite 1150
5   Las Vegas, Nevada  89102
    Telephone:     (702) 673-1000
6   Facsimile:     (702) 673-1001

7   *Attorneys for Plaintiff - Federal Deposit Insurance Corporation*
    *as receiver for Community Bank of Nevada*

8

9                  **UNITED STATES DISTRICT COURT**

10                       **DISTRICT OF NEVADA**

11

12   FEDERAL DEPOSIT INSURANCE CORPORATION,      Case No.: 2:13-cv-606-GMN-VCF
     AS RECEIVER FOR COMMUNITY BANK OF
13   NEVADA,

14                      Plaintiff,              **STIPULATION AND ORDER TO
                                                AMEND COMPLAINT**
         *vs.*
15
     NEVADA TITLE COMPANY, a NEVADA
16   CORPORATION;  DOE INDIVIDUALS 1 through 10;
     and ROE CORPORATIONS 1 through 10,
17
                       Defendants.
18

19          COMES   NOW   Plaintiff   FEDERAL   DEPOSIT   INSURANCE   CORPORATION

20   ("FDIC"), as receiver for Community Bank of Nevada, by and through its attorneys of record,

21   Meier Fine & Wray, LLC, and Defendant Nevada Title Company, by and through its attorneys of

22   record, Marquis Aurbach Coffing, and hereby stipulate as follows:

23          1.      That Plaintiff may file its Amended Complaint, a copy of which is attached hereto

24   as **Exhibit "1"**; and

25   ///

26   ///

27   ///

28   ///

1     2.     The Motion to Amend Complaint [Document No. 34] is hereby taken off calendar

2  as moot.

3  Dated this 11th day of February, 2015.

4                   MEIER FINE & WRAY, LLC

5

6                   By    /s/Rachel E. Donn

                          GLENN F. MEIER, ESQ.

7                          Nevada Bar No. 006059

                          RACHEL E. DONN, ESQ.

8                          Nevada Bar No. 010568

                          2300 West Sahara Avenue, Suite 1150

9                          Las Vegas, Nevada  89102

                          *Attorneys for Plaintiff - Federal Deposit*

10                       *Insurance Corporation as receiver for*

11                       *Community Bank of* Nevada

12  Dated this 11th day of February, 2015.

13                   MARQUIS AURBACH COFFING

14                   By    /s/Terry A. Moore

                          TERRY A. MOORE, ESQ.

15                          Nevada Bar No. 007831

                          10001 Park Run Drive

16                          Las Vegas, Nevada  89145

17                       *Attorneys for Defendant Nevada Title Company*

18

19                   **ORDER**

20     IT IS SO ORDERED.

21

22          February 12, 2015

  DATED: _____

23                   UNITED STATES MAGISTRATE JUDGE

24

25  Pursuant to LR 15-1(b), [a]fter the Court has filed its order granting the permission to amend, the moving party shall file and serve the amended pleading.  Plaintiff must file the Amended Complaint on or before February 20, 2015.

26

27

28

EXHIBIT "1"

1   GLENN F. MEIER, ESQ.
Nevada Bar No. 006059
2   gmeier@nvbusinesslawyers.com
RACHEL E. DONN, ESQ.
3   Nevada Bar No. 010568
rdonn@nvbusinesslawyers.com
4   **MEIER FINE & WRAY, LLC**
2300 West Sahara Avenue, Suite 1150
5   Las Vegas, Nevada 89102
Telephone:  (702) 673-1000
6   Facsimile:  (702) 673-1001

7   *Attorneys for Federal Deposit Insurance Corporation*
*as receiver for Community Bank of Nevada*

8

9              **UNITED STATES DISTRICT COURT**

10                **DISTRICT OF NEVADA**

11

12   COMMONWEALTH LAND TITLE COMPANY,
AND FEDERAL DEPOSIT INSURANCE
13   CORPORATION, AS RECEIVER FOR COMMUNITY   Case No.: 2:13-cv-606-GMN-VCF
BANK OF NEVADA,
14
                 Plaintiff,                     PROPOSED
15                             AMENDED COMPLAINT
   *vs.*
16   NEVADA TITLE COMPANY, a NEVADA
CORPORATION;  DOE INDIVIDUALS 1 through 10;
17   and ROE CORPORATIONS 1 through 10,

18                 Defendants.

19

20        COMES NOW Plaintiff COMMONWEALTH LAND TITLE COMPANY,

21   ("Commonwealth") and FEDERAL DEPOSIT INSURANCE CORPORATION ("FDIC"), as

22   receiver for Community Bank of Nevada, by and through their attorneys of record, Meier Fine &

23   Wray, LLC, and complains against Defendant Nevada Title Company ("NTC"), a Nevada

24   Corporation.

25   \\\

26   \\\

27   \\\

28   \\\

*Sidebar (rotated):* MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

**MEIER FINE & WRAY, LLC**
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

## GENERAL ALLEGATIONS

### A. Jurisdiction

1.     Jurisdiction is proper in this Court pursuant to 12 U.S.C. § 1819(b)(2).  Venue is proper because the transaction which is the subject of the dispute took place in Clark County Nevada.

### B. Parties

2.     Commonwealth Land Title Insurance Company, is a Pennsylvania corporation.

3.     FDIC is a United States government corporation and is the Receiver for Community Bank of Nevada, which was a Nevada corporation.

4.     Upon information and belief Defendant Nevada Title Company is a Nevada corporation.

### C. Background Facts

5.     This litigation is the result of a purchase loan transaction of certain real property located in Clark County Nevada commonly described as 3685 West Flamingo Road, Las Vegas, NV 89103,  Assessors Parcel Number: 162-20-110-008 ("Subject Property").

6.     On or about October 11, 2005, nonparty Dynasty Towers, LLC ("Dynasty") and Outback Steakhouse of Florida, LLC ("Outback") entered into a contract to purchase the Subject Property, the "Agreement of Purchase and Sale" ("APS").

7.     The APS sets forth certain obligations between the nonparty Dynasty and Outback relating to the sale and development of the Subject Property.

8.     On or about March 10, 2008, nonparty Dynasty, executed and granted Community Bank a deed of trust ("First Deed of Trust").  The First Deed of Trust was recorded on April 4, 2008 with the Clark County recorder as Book and Instrument number: 20080404-0004710.

9.     The First Deed of Trust secured a six million six hundred thousand dollar ($6,600,000.00) purchase money loan from Community Bank of Nevada ("CBON") and encumbered the Subject Property in the first priority position.

10.     CBON obtained a title insurance policy (the "Policy") issued by Commonwealth

Land Title Insurance Company ("Commonwealth").   A copy of the relevant portions of the Policy is attached as **Exhibit 1.**

11.     The Policy provides that, in the event of a payment by Commonwealth under the Policy, Commonwealth is entitled to all the rights and claims of the FDIC.   See Exhibit 1, Policy Conditions § 12.

12.     On or about April 4, 2008, nonparty Dynasty granted Outback a deed of trust ("Second Deed of Trust"). The Second Deed of Trust was also recorded on April 4, 2008 with the Clark County recorder as Book and Instrument number: 20080404-0004711.

13.     The Second Deed of Trust expressly secured, to Outback, Dynasty's performance of the obligations set forth in the APS and not the obligations under the First Deed of Trust.

14.     CBON was not a party to the Second Deed of Trust.

15.     CBON was not a party to the APS.

16.     NTC was the escrow agent on the April 4, 2008 transaction No. 05-10-0508-CLB. See Instructions to Title Company, (the "Escrow Instructions") a copy of which is attached as **Exhibit 2**.

17.     The Escrow Instructions required NTC to record the documents which memorialized the transaction "only when [NTC] assured that the enclosed deed of trust will be afforded a first lien priority status." See **Exhibit 2**.

18.     On or about April 4, 2008, Outback conveyed the Subject Property to Dynasty via Grant, Bargain, Sale Deed ("GBS Deed") which was recorded with the Clark County recorder as Book and Instrument number: 20080404-0004709.

19.     The GBS Deed purports to incorporate the APS and create a "covenant running with the land" (the "Purported Covenant").   A copy of the GBS Deed is attached as **Exhibit 3**.

**D.  Default and Acquisition by FDIC.**

20.     On or about October 8, 2008 nonparty Dynasty defaulted under the First Deed of Trust.

21.     On March 2, 2009, a Notice of Trustee's Sale was recorded with the Clark County Recorder as Book and Instrument number: 20090302-0001686.

MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1541.038                                         - 3 -

22. On March 24, 2009, Outback recorded a document called "Notice of Covenant Running With the Land" ("Notice of Covenant"), instrument number: 20090324-0003822.

23. On August 14, 2009, CBON failed and the FDIC was appointed receiver of CBON.

24. On January 6, 2010, a second Notice of Trustee's Sale was recorded at the Clark County recorder as Book and Instrument number as Book/Instrument No. 20100106-0003937.

25. On or about February 2, 2010, the FDIC acquired the Subject Property via Trustee's Deed Upon Sale under the Subject Deed of Trust.

26. The Trustee's Deed Upon Sale was recorded with the Clark County Recorder as Book and Instrument number: 20100202-0004006.

27. The February 2, 2010 Trustee's Sale as memorialized by the Trustee's Deed Upon Sale extinguished all junior liens, including the Second Deed of Trust and the Purported Covenant.

**E. Declaratory Relief Litigation**

28. On June 6, 2011, a Nevada limited liability company 26 Flamingo, LLC ("Flamingo") claimed to have acquired certain purported remaining interests in the Subject Property from Outback, via a quitclaim "Assignment of Interests."

29. The Assignment of Interests refers to the Purported Covenant, the Second Deed of Trust, and a Guaranty of Payment by a nonparty. A copy of the Assignment of Interests is attached as **Exhibit 4**.

30. Flamingo claimed that the Purported Covenant was not extinguished by the Trustee's sale under the First Deed of Trust, and on June 20, 2011, Flamingo demanded from the FDIC, a payment of four million dollars ($4,000,000.00) based on the Purported Covenant.

31. The FDIC tendered a claim under the Policy to Commonwealth, which Commonwealth accepted under the Policy.

32. On December 5, 2011, the FDIC filed a complaint for declaratory relief regarding Flamingo's claims about the Assignment of Interests and the Purported Covenant in the United States District Court, District of Nevada   (2:11-cv-01936-JCM-NJK) (the "Declaratory Relief

MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1541.038

- 4 -

1  Action").

2      33.    On October 17, 2013 the Declaratory Relief Action settled and was dismissed.

3  See 2:11-cv-01936-JCM-NJK, ECF No. 109.

4      34.    The settlement required Commonwealth to pay $400,000.00 ("Settlement

5  Payment").

6      35.    The settlement further required the FDIC to transfer title to the Subject Property

7  for an amount, which upon information and belief, was far less than the value of the Subject

8  Property.

9                          **FIRST CLAIM FOR RELIEF**

10                              **Breach of Contract**

11     36.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

12  through 35 and incorporates the same herein by reference.

13     37.    NTC and Commonwealth's predecessor CBON, entered into a contract

14  memorialized by the Escrow Instructions.

15     38.    Commonwealth's predecessor CBON performed fully under the contract by

16  providing the $6.6 million funds and documents necessary for NTC to close escrow transaction

17  on April 4, 2008.

18     39.    NTC breached the Escrow Instructions by not ensuring that the First Deed of

19  Trust was afforded first lien priority position, which resulted in the Declaratory Relief Action

20  and the related costs and expenses thereof, including attorneys' fees.

21     40.    Commonwealth as successor to the FDIC and CBON, suffered damages relating

22  to NTC's breach by having to pay $400,000.00 to facilitate settlement, along with the costs and

23  expenses of the Declaratory Relief Action, including attorneys' fees.

24     41.    As a result of NTC's conduct the FDIC to facilitate the settlement agreement had

25  to transfer the Subject Property for less than its value.

26     42.    The FDIC incurred the costs and expenses of the Declatory Relief Action,

27  including attorneys' fees.

28  \\\

MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

File No.: 1541.038                    - 5 -

**SECOND CLAIM FOR RELIEF**

**Professional Negligence**

43.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 and incorporates the same herein by reference.

44.     NTC was a fiduciary and agent to the parties to the escrow agreement.

45.     NTC had a duty to follow the Escrow Instructions to ensure that the Property was not encumbered with any interest with priority over the First Deed of Trust.  NTCs duty to follow the Escrow Instructions required the use of the skill, prudence, and diligence as other members of the escrow profession.

46.     NTC breached its duty to follow the Escrow Instructions by recording the GBS Deed, the First Deed of Trust, and the Second Deed of Trust, without ensuring that the First Deed of Trust was "afforded a first lien priority status" as required by the Escrow Instructions.

47.     Because of NTC's breach of its duty, nonparty 26 Flamingo claimed the Purported Covenant, as memorialized in the GBS Deed and the Second Deed of Trust, had a superior priority interest over the First Deed of Trust.

48.     As a result of NTC's breach of its duty to follow the Escrow Instructions, FDIC was forced to initiate the Declaratory Relief Action.

49.     As a result of the Declaratory Relief action, Commonwealth suffered actual damages by paying $400,000.00 to facilitate the settlement agreement and in addition to the settlement payment, Commonwealth incurred the costs and expenses of the Declaratory Relief Action, including attorneys' fees.

50.     As a result of the Declaratory Relief Action, the FDIC transferred title to the Subject Property for an amount less than the value of the Subject Property.  The FDIC incurred the costs and expenses of the Declaratory Relief Action, including attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**Breach of Fiduciary Duty**

51.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 and incorporates the same herein by reference.

MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

52. NTC was an agent and fiduciary of the parties to the Escrow Instructions.

53. NTC owed a fiduciary duty to Commonwealth and the FDIC, through its predecessor CBON.

54. NTC breached its fiduciary duty by failing to ensure that the First Deed of Trust was "afforded a first lien priority status" as required by the Escrow Instructions.

55. NTC's breach caused Commonwealth damages by having to pay $400,000.00 to facilitate settlement of the Declaratory Relief Action, and additional costs and expenses of the Declaratory Relief Action, including attorneys' fees.

56. As a result of NTC's conduct, the FDIC to facilitate the settlement agreement had to transfer the Subject Property for less that its value. The FDIC incurred the costs and expenses of the Declaratory Relief Action, including attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### Equitable Indemnity

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 and incorporates the same herein by reference.

58. Flamingo claimed that the Purported Covenant had priority over the First Deed of Trust, and that the Purported Covenant survived the foreclosure of the First Deed of Trust, which necessitated the Declaratory Relief Action, which resulted in Commonwealth paying $400,000.00 to facilitate settlement between the FDIC and Flamingo, all of which resulted because of NTC's failure to follow the contract terms set forth in Escrow Instructions ensuring that the First Deed of Trust was a first priority lien.

59. In equity, Commonwealth, as successor to the FDIC, is entitled to indemnity from Nevada Title for any damages sustained by the FDIC or Commonwealth, if any, and for any sums paid by way of settlement or judgment rendered against the FDIC in the Declaratory Relief Action.

60. Commonwealth, as successor to the FDIC, is entitled to recover from Nevada Title all costs, expenses and attorneys' fees incurred in the prosecution of the Declaratory Relief Action and this litigation.

MEIER FINE & WRAY, LLC
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada 89102
Tel: (702) 673-1000
Fax: (702) 673-1001

61.     According to the Policy, Commonwealth, by paying $400,000.00 to facilitate settlement of the Declaratory Relief Action, has all of the rights of the FDIC, including the rights created by the Escrow Instructions and the right to seek recovery of the Settlement Payment.

**PRAYER**

WHEREFORE, Plaintiff Commonwealth, prays for:

1.     A judgment against NTC for breach of contract;

2.     A judgment against NTC for breach of fiduciary duty;

3.     A judgment against NTC for professional negligence;

4.     A judgment against NTC for contractual or equitable indemnity;

5.     An award of costs and attorneys' fees; and

6.     Any other relief as this Court deems just and proper.

Dated this 26th day of January, 2015.

MEIER FINE & WRAY, LLC

/s/Rachel E. Donn
GLENN F. MEIER, ESQ.
Nevada Bar No. 006059
RACHEL E. DONN, ESQ.
Nevada Bar No. 010568
2300 West Sahara Avenue, Suite 1150
Las Vegas, Nevada  89102
*Attorneys for Plaintiff*

# EXHIBIT 1

# LOAN POLICY OF TITLE INSURANCE

Issued by **Commonwealth Land Title Insurance Company**



Commonwealth Land Title Insurance Company is a member of the
LandAmerica family of title insurance underwriters.

**POLICY NUMBER**

**K57-Z011365**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   (g) a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
        (i) contracted for or commenced on or before Date of Policy; or
        (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

        (i) to be timely, or

        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14 Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records..

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary

### COMMONWEALTH LAND TITLE INSURANCE COMPANY

Attest:



          Secretary                                        President

By:

and sealed as required by its By-Laws.

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.     (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i) the occupancy, use, or enjoyment of the Land;

        (ii) the character, dimensions, or location of any improvement erected on the Land;

        (iii) the subdivision of land; or

        (iv) environmental protection;

        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

### 1. DEFINITION OF TERMS
The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the indebtedness is the sum of

(i) the amount of the principal disbursed as of Date of Policy;

(ii) the amount of the principal disbursed subsequent to Date of Policy;

(iii) the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv) interest on the loan;

(v) the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi) the expenses of foreclosure and any other costs of enforcement;

(vii) the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) the amounts to pay taxes and insurance; and

(ix) the reasonable amounts expended to prevent deterioration of improvements; but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

(i) The term "Insured" also includes

(A) the owner of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B) the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

(C) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(D) successors to an Insured by its conversion to another kind of Entity;

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) if the grantee wholly owns the named Insured, or

(3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii) With regard to (A), (B), (C), (D) , and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f) "Insured Claimant": An Insured claiming loss or damage.

(g) "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known": Actual knowledge, not by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": The estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS
(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to

Conditions Continued

select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii) To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i) the Amount of Insurance,

(ii) the Indebtedness,

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final

**Conditions Continued**

determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as Insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

**13. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**15. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at: Consumer Affairs Department PO Box 27567 Richmond, Virginia 23261-7567

# EXHIBIT 2

 **Nevada Title Company**

2500 N Buffalo, Suite 150, Las Vegas, NV 89128   (702) 251-5000   FAX: (702) 966-5848

## RECORDING INSTRUCTIONS

| | | | | |
|---|---|---|---|---|
| Escrow No: | 05-10-0508-CLB | | Printed: | 4/4/08 10:01 AM |
| Title No.: | 05-10-0508-CLB | | | |
| To Close On: | 4/04/2008 | | | |

| | | | | |
|---|---|---|---|---|
| Policy Type: | X | Owner's Policy-CLTA | X | Loan Policy-ALTA |
| | | Fast Policy | | 2nd Loan Policy |

| | | Liability | Premium |
|---|---|---|---|
| Coverage Requested: | Owner's: | $9,800,000.00 | $11,812.50 |
| | Lender's: | $6,600,000.00 | $3,650.00 |
| | 2nd Lender's: | | |

Premium Based on: []Subdivision Rates; []Short Term Rate; []from Rate Chart; []Special: _____

| | |
|---|---|
| Endorsements Required: | 100-116-8.1, 111.5, 103.3 ($25), 103.5 ($100) |
| (Must be broken down) | |
| Collected for Endorsements: | $125.00 |

THAT PORTION LOT 1 OF "VALLEY VIEW/FLAMINGO" AN INDUSTRIAL SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 57, PAGE 64 OF PLATS, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA, LYING WITHIN THE NORTHWEST QUARTER (NW ¼) OF SECTION 20, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER (NE COR.) OF SAID PLAT, SAID POINT BEING ON THE SOUTH RIGHT OF WAY LINE OF FLAMINGO ROAD (WIDTH VARIES); THENCE DEPARTING SAID SOUTH RIGHT OF WAY LINE TO FOLLOW THE EASTERLY LINE OF SAID PLAT, FROM A TANGENT BEARING SOUTH 07°16'34" WEST, CURVING TO THE LEFT ALONG THE ARC OF A 340.00 FOOT RADIUS CURVE CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 35°32'06", AN ARC LENGTH OF 210.87 FEET TO A POINT ON A NON-TANGENT CURVE, A RADIAL LINE TO SAID POINT BEARS SOUTH 61°44'28" WEST; THENCE DEPARTING SAID EASTERLY LINE FROM A TANGENT BEARING SOUTH 82°21'48" WEST, CURVING TO THE RIGHT ALONG THE ARC OF A 30.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY, THROUGH A CENTRAL ANGLE OF 14°37'01", AN ARC LENGTH OF 7.65 FEET TO A POINT OF COMPOUND CURVATURE, A RADIAL LINE TO SAID POINT BEARS SOUTH 06°58'49" WEST; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 76.50 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 38°14'42", AN ARC LENGTH OF 51.06 FEET; THENCE NORTH 44°46'29" WEST, 7.07 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 212.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 45°05'43", AN ARC LENGTH OF 166.86 FEET; THENCE NORTH 89°52'12" WEST, 111.94 FEET; THENCE NORTH 01°29'21" WEST, 130.58 FEET; THENCE CURVING TO THE RIGHT ALONG THE ARC OF A 267.50 FOOT RADIUS CURVE, CONCAVE EASTERLY, THROUGH A CENTRAL ANGLE OF 11°08'33", AN ARC LENGTH OF 52.02 FEET; THENCE NORTH 09°39'12" EAST, 33.18 FEET TO A POINT ON THE SAID SOUTH RIGHT OF WAY OF FLAMINGO ROAD, SAID POINT ALSO BEING A POINT ON A NON-TANGENT CURVE; THENCE FROM A TANGENT BEARING SOUTH 78°19'20" EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 920.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 04°47'22", AN ARC LENGTH OF 76.90 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 16°28'02" EAST, THENCE CONTINUING ALONG SAID SOUTHERLY RIGHT OF WAY LINE, SOUTH 67°46'15" EAST, 217.52 FEET TO THE POINT OF BEGINNING.

(A.P.N.: 162-20-110-008)

Property Address: 3685 West Flamingo Road, Las Vegas, NV

 **Nevada Title Company**

See Documents Attached for Insured Parties
ITEMS ENCLOSED FOR RECORDING:
1. Deed
2. DT

STATUS OF ITEMS ON PRELIMINARY REPORT: (Must specify why items are being removed (how))
1. Show 2007-2008 Taxes paid in full
2. Show Supplemental
3. Show Boundaries
4. Show Reservations
5. Show Easement
6. Show Effect
7. Show Effect
8. Show Terms
9. Show Dedications
10. Show Terms
11. Show CC&R's
12. Show Effect
13. Out
14. Out
15. Show Water
16. Out 16-20

A copy of tax print-out is attached.
[X]Taxes are NOT being paid through this escrow.
[ ]Taxes ARE being paid through this escrow: Amount $X

These Instructions were prepared by:        Leslye Roman
These Instructions have been approved by:

SEND LOAN POLICY TO:   Community Bank of Nevada
8945 W. Russell Rd., 3rd Floor, Suite 300
Las Vegas, NV  89148
Loan No.

## INSTRUCTIONS TO TITLE COMPANY

TO: *Nevada Title Company*                 DATE: *April 4, 2008*

*2500 N. Buffalo, Suite # 150, LV, NV 89128*

ATTENTION: *Kristin Ravelo - (702) 251-5000*       YOUR ORDER NO: *05-10-0508-CLB*

FROM: *Community Bank of Nevada*           CBN LOAN NO.:

*8945 W Russell Road #300, LV, NV 89148*    PHONE NUMBER: *992-1069 - Kim Bruschke*

BORROWER: *Dynasty Towers, LLC*

ADDRESS OF PROPERTY: *3685 W. Flamingo Rd., Las Vegas, NV 89103*

*APN 162-20-110-008*

1. [ X ]  Search title and judgements, and if there are no further entries to be shown, record the following documents in the order shown only when you are assured that the enclosed Deed of Trust will be afforded a **first lien priorty status**. Title vesting shown must be in the name of our Trustor.

         1 *Deed of Trust*                       3

         2                               4

2. [ X ]  Issue _____ LP10 policy (ALTA Loan Policy 10-17-92)

         Issue  $  ✓ 6,600,000.00  ALTA Loan Policy (10-17-92) with ALTA Endorsement Form 1 Coverage

3. [ X ]  Issue Endorsements CLTA 100 and 116 or equivalent.

4. [   ]  Issue Endorsements 102.5, 101.2, 111.5

5. [ X ]  Issue following Endorsements:    X_ 103.3    ___110.5    ___108.8  X 111.5    ___110.10
                                        ___110.1    ___116.4  X_ Other  8.1'

6. [   ]  Hold for:

7. [ X ]  IN RE:          **Prelim dated 3/21/08**          Only the following may be shown as exceptions in the ALTA Lender's Policy, and none others:   ***Show exceptions 1 & 2 CURRENT / 3, 6-8, 10-12 OK / 4, 5, 9, ENDORSEMENT 103.3 / 13-20 OUT.***

8. [   ]  Taxes must be current. Any exception for unpaid taxes and/or assessments shall include the phrase "not yet due and payable."

9. [   ]  The enclosed funds are to be disbursed only after the enclosed Deed of Trust is of record. Any funds to be held by you in escrow are to be deposited with Community Bank of Nevada. Upon recording, please return to this office a conformed copy of the Deed of Trust. If you are unable to comply with and close this order on or before 5pm of the third day following the date of these instructions, or if there are to be any changes therein, you are not to proceed without further authorization from the lender.

10. [ X ]  Special Instructions:

         Please have a title rep. sign the front page of the DOT to concur that there are no SSN within the document.

11. [   ]  CONSTRUCTION MAY HAVE COMMENCED UPON THE SITE COVERED UNDER THE DEED OF TRUST. DO NOT ISSUE THE LP10 POLICY REFERRED TO ABOVE UNLESS YOU ARE WILLING TO DO SO WITH THE KNOWLEDGE THAT THE LENDER IS RELYING THEREON FOR PROTECTION AGAINST THE CLAIMS OF MECHANICS AND MATERIALMEN TO THE SAME DEGREE THAT IT WOULD RELY SHOULD NO WORK HAVE COMMENCED AND YOUR OWN INSPECTION WOULD HAVE REVEALED SUCH A FACT.

12. [ X ]  Please call when recorded.              RECEIVED AND ACKNOWLEDGED:

     COMMUNITY BANK OF NEVADA                By:

By: _____         Its:

Title: Krissy Rogers, VP                  Date:

# EXHIBIT 3

Receipt/Conformed Copy

Requestor:
NEVADA TITLE COMPANY
04/04/2008 14:31:26  T20080057405
Book/Instr:  20080404-0004709
Deed            Page Count: 6
Fees: $18.00   N/C Fee:  $0.00
RPTT: $49,980.00

Debbie Conway
Clark County Recorder

A.P. N.:   162-20-110-008
R.P.T.T.: $49,980.00

Escrow #05-10-0508-CLB

Mail tax bill to and
When recorded mail to:
Dynasty Towers, LLC
3695 W. Flamingo Rd
Las Vegas, NV 89103
Attn: Simon Shakib

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH**, That **Outback Steakhouse of Florida, LLC,
a Florida limited liability company who acquired title as Outback Steakhouse of
Florida, Inc., a Florida Corporation**, for a valuable consideration, the receipt of
which is hereby acknowledged, do hereby Grant, Bargain, Sell and Convey to **Dynasty
Towers, LLC, a Nevada limited liability company**, all that real property situated in the
County of **Clark**, State of Nevada, bounded and described as follows:

### SEE LEGAL DESCRIPTION ATTACHED HERETO
### AND MADE A PART HEREOF AS EXHIBIT "A".

**SUBJECT TO:**

1. Taxes for the current fiscal year, not delinquent, including personal property taxes of any
   former owner, if any;

2. Restrictions, conditions, reservations, rights, rights of way and easements now of record, if
   any, or any that actually exist on the property.

3. The real property is being conveyed subject to the terms of the Agreement of Purchase and
   Sale with an effective date of October 11, 2005, as supplemented and amended by (i) First
   Amendment to Agreement of Purchase and Sale with and effective date of March 27, 2008
   and (ii) Second Amendment to Agreement of Purchase and Sale dated the __4__ day of April
   2008 (collectively, the "Contract"), with respect to the obligation of the grantee to deliver to
   the grantor either (1) the Restaurant Condominium Unit or (2) the Payment In Lieu of
   Condominium Unit, as defined and provided for in the Contract. This obligation is
   incorporated into this deed by this reference, and is a covenant running with the land.

**TOGETHER WITH** all singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

IN WITNESS WHEREOF, this instrument has been executed this _3rd_ day of _April_ , 2008.

Outback Steakhouse of Florida, LLC, a Florida
limited liability company as successor to
Outback Steakhouse of Florida, Inc., a Florida
corporation

By: _Karen Bremer_

Print Name: _Karen C Bremer_

Title: _Authorized Agent_

STATE OF FLORIDA            )
                            )
COUNTY OF HILLSBOROUGH      )

        The foregoing instrument was acknowledged before me this _3rd_ day of April, 2008, by Karen C. Bremer, as Authorized Agent of Outback Steakhouse of Florida, LLC, a Florida limited liability company, as successor by conversion to Outback Steakhouse of Florida, Inc., a Florida corporation, for and on behalf of the limited liability company.

_Amanda Allie_
{Signature of Notary Public}

Printed Name: _Amanda Allie_
                {Name to be printed or stamped}

AMANDA ALLIE
MY COMMISSION # DD 441794
EXPIRES: June 16, 2009
Notary Public Underwriters

☒ personally known to me or ☐ produced identification. {applicable box to be checked}

Identification produced: _____.
{if identification was produced, type of identification provided to be inserted}

2

Escrow No.: 05-10-0508-CLB

## EXHIBIT "A"

## LEGAL DESCRIPTION

THAT PORTION LOT 1 OF "VALLEY VIEW/FLAMINGO" AN INDUSTRIAL
SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 57, PAGE 64
OF PLATS, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY,
NEVADA, LYING WITHIN THE NORTHWEST QUARTER (NW ¼) OF SECTION
20, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.M., CLARK COUNTY,
NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER (NE COR.) OF SAID PLAT, SAID
POINT BEING ON THE SOUTH RIGHT OF WAY LINE OF FLAMINGO ROAD
(WIDTH VARIES); THENCE DEPARTING SAID SOUTH RIGHT OF WAY LINE
TO FOLLOW THE EASTERLY LINE OF SAID PLAT, FROM A TANGENT
BEARING SOUTH 07°16'34" WEST, CURVING TO THE LEFT ALONG THE ARC
OF A 340.00 FOOT RADIUS CURVE CONCAVE NORTHEASTERLY, THROUGH
A CENTRAL ANGLE OF 35°32'06", AN ARC LENGTH OF 210.87 FEET TO A
POINT ON A NON-TANGENT CURVE, A RADIAL LINE TO SAID POINT BEARS
SOUTH 61°44'28" WEST; THENCE DEPARTING SAID EASTERLY LINE FROM
A TANGENT BEARING SOUTH 82°21'48" WEST, CURVING TO THE RIGHT
ALONG THE ARC OF A 30.00 FOOT RADIUS CURVE, CONCAVE NORTHERLY,
THROUGH A CENTRAL ANGLE OF 14°37'01", AN ARC LENGTH OF 7.65 FEET
TO A POINT OF COMPOUND CURVATURE, A RADIAL LINE TO SAID POINT
BEARS SOUTH 06°58'49" WEST; THENCE CURVING TO THE RIGHT ALONG
THE ARC OF A 76.50 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY,
THROUGH A CENTRAL ANGLE OF 38°14'42", AN ARC LENGTH OF 51.06
FEET; THENCE NORTH 44°46'29" WEST, 7.07 FEET; THENCE CURVING TO
THE LEFT ALONG THE ARC OF A 212.00 FOOT RADIUS CURVE, CONCAVE
SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 45°05'43", AN ARC
LENGTH OF 166.86 FEET; THENCE NORTH 89°52'12" WEST, 111.94 FEET;
THENCE NORTH 01°29'21" WEST, 130.58 FEET; THENCE CURVING TO THE
RIGHT ALONG THE ARC OF A 267.50 FOOT RADIUS CURVE, CONCAVE
EASTERLY, THROUGH A CENTRAL ANGLE OF 11°08'33", AN ARC LENGTH
OF 52.02 FEET; THENCE NORTH 09°39'12" EAST, 33.18 FEET TO A POINT ON
THE SAID SOUTH RIGHT OF WAY OF FLAMINGO ROAD, SAID POINT ALSO
BEING A POINT ON A NON-TANGENT CURVE; THENCE FROM A TANGENT
BEARING SOUTH 78°19'20" EAST, CURVING TO THE RIGHT ALONG THE
ARC OF A 920.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY,

THROUGH A CENTRAL ANGLE OF 04°47'22", AN ARC LENGTH OF 76.90
FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 16°28'02"
EAST, THENCE CONTINUING ALONG SAID SOUTHERLY RIGHT OF WAY
LINE, SOUTH 67°46'15" EAST, 217.52 FEET TO THE POINT OF BEGINNING.

**State of Nevada**
**Declaration of Value**

1.  Assessor Parcel Number(s)
    a)  162-20-110-008
    b)  _____
    c)  _____
    d)  _____
        _____
        _____

2.  Type of Property:

| | | | |
|---|---|---|---|
| ☐ a) Vacant Land | ☐ b) Sgl. Fam. Residence | | |
| ☐ c) Condo/Twnhse | ☐ d) 2-4 Plex | | |
| ☐ e) Apt. Bldg. | X f) Comm'l/Ind'l | | |
| ☐ g) Agricultural | ☐ h) Mobile Home | | |
| ☐ i) Other | | | |

```
FOR RECORDER'S OPTIONAL USE ONLY
Document/Instrument #: _____
Book:_____ Page _____
Date of Recording:_____
Notes:_____
```

3.  Total Value/Sales Price of Property                           $9,800,000.00

    Deed in Lieu of Foreclosure Only (value of property)   _____

    Transfer Tax Value:                                          $9,800,000.00

    Real Property Transfer Tax Due                               $49,980.00

4.  **If Exemption Claimed:**

    a.  Transfer Tax Exemption, per NRS 375.090,
        Section:                                    _____

    b.  Explain Reason for
        Exemption:                                  _____

5.  Partial Interest: Percentage being transferred:    100 %

The undersigned declare(s) and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owned.

Signature: _____    Capacity: __GRANTOR/SELLER__

Signature: _____    Capacity: __GRANTEE/BUYER__

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: Outback Steakhouse of Florida, LLC, a Florida limited liability company as successor to Outback Steakhouse of Florida, Inc., a Florida corporation | Print Name: Dynasty Towers, LLC, a Nevada limited liability company |
| Address: 2202 North West Shore Blvd., 5th Floor | Address: 3695 W. Flamingo Rd. |
| City/State/Zip: Tampa | City/State/Zip: Las Vegas NV 89103 |

COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)

| | | |
|---|---|---|
| Print Name: Nevada Title Company | | Esc. #: 05-10-0508-CLB |
| Address: 2500 N Buffalo, Suite 150 | | |
| City: Las Vegas | State: NV | Zip: 89128 |

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)

# EXHIBIT 4

## ASSIGNMENT OF INTERESTS

For value received, the undersigned, Outback Steakhouse of Florida, LLC, a Florida limited liability company ("Assignor"), hereby assigns and transfers to 26 Flamingo, LLC, a Nevada limited liability company ("Assignee"), as of the ⌐OTH day of June, 2011 (the "Effective Date") all right, title and interest, if any, of Assignor in and to the following (collectively, the "Assigned Interests"):

(1) Notice of Covenant Running with the Land, recorded with the Clark County Recorder on March 24, 2009 (Book/Instr. 20090324-0003822), together with any and all rights of Seller to collect the Payment in Lieu of Condominium Unit referenced therein;

(2) Covenant referenced in Grant, Bargain and Sale Deed, recorded with the Clark County Recorder on April 4, 2008 (Book/Instr. 20080404-0004709);

(3) Guaranty of Payment in favor of Assignor from Simon K. Shakib; and

(4) Deed of Trust recorded with the Clark County Recorder on April 4, 2008 (Book/Instr. 20080404-0004711).

This Assignment of Interests (this "Assignment") is being delivered pursuant to an Agreement for Assignment of Certain Interests between Assignor, as "Seller" and Assignee, as "Purchaser", with an effective date of April 28, 2011 (as amended by First Amendment with an effective date of May 26, 2011 and a Second Amendment with an effective date of May 27, 2011, the "Contract"). Assignee is successor to Royal Investors Group, LLC, a California limited liability company, the original "Purchaser" under the Contract, pursuant to Assignment and Assumption of Agreement for Assignment of Certain Interests dated as of the 1st day of June 2011.

This is a Quitclaim assignment as it is the intent that this Assignment pass any and all interest, if any, that Assignor has in the Assigned Interests. This assignment is being made without any recourse and without any representation or warranty of any kind, including the validity, effectiveness or enforceability of any of the Assigned Interests.

*Witnesses:*

Name: _Karen A. Anderson_

Name: _Ann Lorrita A. Maxey_

Assignor:

**Outback Steakhouse of Florida, LLC,**
a Florida limited liability company

By: _____
Name: _____
Its: _____

Page 1 of 2

{00008843.DOCX.2}

STATE OF FLORIDA          )
                          )
COUNTY OF HILLSBOROUGH )

The foregoing Assignment was acknowledged before me this 3ʳᵈ day of June, 2011, by _Karen C. Bremer_____, as _Authorized Agent_ of Outback Steakhouse of Florida, LLC, a Florida limited liability company, for and on behalf of the limited liability company.

NOTARY PUBLIC-STATE OF FLORIDA
Kim F. Dummett
Commission #DD888468
Expires: JUNE 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

(Notary Seal)

_Kim F. Dummett_____
{Signature of Notary Public}

Printed Name: _Kim F. Dummett____
{Name to be printed or stamped}

☑ personally known to me or ☐ produced identification. {applicable box to be checked}

Identification produced: _____
{if identification was produced, type of identification provided to be inserted}

Page 2 of 2

{00008843.DOCX.2}